I am Steve Larson. I represent Plaintiff Julie Willis. Plaintiff Willis is appealing the District Court's decision granting summary judgment against her in favor of State Farm Mutual and State Farm Fire. I'd first like to address the issue as to State Farm Mutual. We believe the Court erred in ruling in favor of State Farm Mutual as a matter of law because the Court construed the words applied for in the Fair Credit Reporting Act in favor of the defendant insurance companies. The Fair Credit Reporting Act is a consumer protection statute and those terms, the words of the statute, should have been liberally construed in favor of the consumer as the Ninth Circuit has held before. And we believe that if you construe the language of the statute in favor of the consumer, it is plain that the District Court erred. Let me first explain how these entities worked. State Farm Mutual is the operating entity. It is the one that employs all the employees, owns the computer system that sorts where a person is placed, and besides being the operating company, it also is an insurance company that provides preferred insurance. It's the insurance that everybody wants because it's the least expensive. State Farm Fire, on the other hand, is just a recipient of these policies. It doesn't underwrite them. It doesn't handle the claims for them. It just receives the policies. And State Farm Fire just issues standard policies, not the preferred, not as good ones. I think it's important about who is really the operating company here because we believe that's who takes the adverse action. They own the computer system. They do the underwriting, set the rates. They employ all the employees. And most significantly, we think, is that they are the entity that contracts with Choice Point. You may have heard recently about Choice Point releasing information about a number of individuals, private information. They are an entity that provides credit information, and State Farm Mutual had a contract with Choice Point. Now when Plaintiff Willis wanted insurance, she walked into a State Farm agent's office and asked for the best available insurance policy. An assistant certainly. Let me just ask you for framing. Is the technical issue in this case whether who took the adverse action or whether it was applied for with State Farm Mutual? I think that the main issue in this case is whether it was applied for. But I think the took also comes into play because it is whether State Farm Mutual took an adverse action. We think it took an adverse action in two respects. By placing the consumer in the less desirable company, the State Farm Fire and Casualty, the standard company. And secondly, because it denied insurance to Ms. Willis. And we think this is important for the point you were asking Mr. Houser about. He kept saying that the issuing company is the only one that has to send the notice. The issuing company is the only one that has to send the notice. Well, the statute talks about a denial of credit applied for, or denial of insurance applied for. There is no issuing company if insurance is denied. And here, State Farm Mutual denied coverage to Ms. Willis because her credit score was not high enough. When Ms. Willis walked into the agent's office, an assistant in the office, not even the agent himself, obtained the information from Ms. Willis. This assistant thought that she would be placed in State Farm Fire and Casualty because she had a speeding ticket before. But that person didn't really know because what makes the determination is the computer system. And all these insurance companies use acronyms for their computer systems. Here in the State Farm case, it is called AUI, Agent Underwriting Information. Everything is done automatically on this computer. The agent's assistant puts the information into the AUI computer, and then the AUI computer automatically pulls a credit report, pulls a motor vehicle driving record, pulls all this information, sorts it all together, and spits out where this person gets placed. The agent, or the agent's assistant, doesn't even see the underwriter's score. Only State Farm Mutual underwriters see the score. Now, the information and the credit score was run... Well, do they see it either, or is it all in the bowels of the computer? The underwriter actually sees the credit score. Now, I needed to point something out. A credit score might be something we all understand of as something used when we want to go borrow money or something like that, and credit agencies issue credit scores. Insurance scores, each of these companies have their own proprietary way of calculating an insurance score, some of the information is filed under seal in this case because it's proprietary, but an insurance score or an underwriting score, whatever the insurance company has used, is still solely with respect to credit. Now, when Ms. Willis went into the agent's office, they ran her credit score, and she did not have a credit score above 725. If she would have, she would have been placed in State Farm Mutual. They admit that, and if I could just read their admission to our interrogatory, it says... So do you think the application was made when she walked into the agent's and made inquiry, or was it made when the... As I understand, they then said, well, you're going to get your insurance with fire and whatever, or at least that's the form they gave her. She filled it out, and then they put that through the computer, but the computer still looked at her for both companies. Correct. Correct. Was that the application? Yes. We believe, from the consumer's perspective, we believe the application was an ongoing process, and we think that was when the decision was made, and it said... And it's important here because the consumer considered placing her in both companies, and the computer would have said, if she had a score above 725, okay to bind in mutual. So obviously, there must have been an application to State Farm Mutual if it was okay to bind in mutual. And so we believe that the application happened when the information was submitted to the AUI system, and that when you described the system, you would view it as an application, however it's labeled, that it's treated as an application to both companies, or to the company. Yeah, to all the State Farm Umbrella... Any company they put you into. Correct. You're just interested in getting some form of State Mutual insurance. Yes, from the consumer's perspective. So the consumer... Correct. I think that... That's one theory. That's one theory, that that was the application. And that it's denied. You have another theory. I assume that they made a decision with respect to the increased rate. We have... That goes to the different entities, the State Farm Mutual took an adverse action, we think, because it placed Ms. Willis into State Farm Fire and Casualty, which had higher rates than State Farm Mutual. And we think it took an adverse action because it denied her coverage. So there's two separate bases for that, we think. As to State Farm Fire, I'm not going to address that, other than just to say the court just ruled that, based on her initial application, there was no claim against State Farm Fire. And what that means is, it kind of comes to the absurd result that Ms. Willis was charged more because of her credit score, but nobody has an obligation to tell her that. Well, but that's because, as I understand it, because Judge Brown's... But if that were changed, it's not that you couldn't get it to anybody. I'm... As I understand it, Judge Brown's ruling with respect to State Farm Fire was based on her, on the generic question that we discussed first. Yes, correct. Were that reversed, you could sue State Farm Fire. Yes, you could. But the issue there, the interesting issue there is, State Farm Fire... So it's not that she can sue nobody. If there's a liability, she can sue somebody. Right. But State Farm Fire's defense will then be, well, we charged her the best rate we could charge her. You know, that's just how our rate structure is set up. But what really is the adverse action here is State Farm Mutual put her, slotted her into an inferior company, and even if that's the best rate within that company, she's not getting the better rate. Did State Farm Fire make that defense? Did they make that defense in the district court? They did not make that defense yet, because the court ruled as that there cannot... Have any of the issuing companies here made that defense? I mean, because when I asked in the last case, the insurance company lawyer told me that, yes, you could always sue the issuing company. Now, you're saying, somewhat intriguingly, well, maybe you can't. I think that in the GEICO case, which is coming up shortly, I think that they do make that point, and I think I can address it then. Counsel, can you... Could you address just briefly the question of the speeding ticket? Did that play a role in the way that, in the case of the speeding ticket, ultimately, it would not have mattered if she had a high enough credit score? Because if you have a credit score above 725, the insurance company ignores one speeding ticket. But if your credit score is not that high, then that one speeding ticket knocks you down into State Farm Fire. So... You're saying then that if she had a higher credit score, they would have ignored the ticket, and she would have moved from there? The credit report, then, did have an impact here. Yes. If she would have had a credit score of above 725, she would have been in mutual. But the judge equated applied for with a written application. The district court thought it was very significant that there was a written application with State Farm Fire's name on the top that an agent's assistant had prepared, not the consumer. But we think that there's no need for a written application. And one district court in the Western District of Kansas, in the Scharf v. AIG course, directly held that there need not be a written application. But in this case, you don't need to get there, because the alternative is simply that the written application was considered as an application for both companies, whatever was on it. Yes. I agree, Your Honor. I agree. Thank you, Judge. Thank you. May it please the Court, my name is Stuart Jones, and I'm appearing here on behalf of State Farm Fire and Casualty and State Farm Mutual Automobile Insurance Company. This is a case where the consumer got exactly what she was quoted without the use of a credit score by State Farm Fire and Casualty. And it was exactly the same rate and the same term that when the agent of the insurance companies quoted her for State Farm Fire and Casualty Company, she says, I'll take that. I'd like to apply for that. Did anybody say you could have a lower rate? She said, I'll take that. Does she know that she could have had a lower rate with one of the State Farm? After the insurance is issued, she sent a notice, a letter saying that she was placed with State Farm Fire, but there's no evidence in the record in terms of what conversation occurred, and she says she wasn't aware of even the existence of separate State Farm companies. In this case, they have sued both State Farm Fire and Casualty, saying that there was a better terms of insurance or lower rate of insurance available to her, and that State Farm Fire and Casualty took adverse action under the Fair Credit Act by not offering her better terms of coverage or a lower price. There's no evidence in the record before this court that State Farm Fire and Casualty offered an insurance product with different terms at a lower price. So it is your position, in terms of getting a little closer to the mystery of why it matters for you to sue, because this has really been, I think, a problem for us. It's your position then that State Farm Fire and Casualty couldn't have taken an adverse action with regard to her rate by not placing her with Mutual because they didn't have the authority to do that? It doesn't. It's an insurance product. It doesn't write. It's written by a different company, a different company entirely. So therefore, why aren't we focusing on the other company, i.e., Mutual, in terms of having taken an adverse action? Well, as soon as you finish persuading us State Farm Fire couldn't be it, then you're going to tell us all the other ones. Then I'll go to the issue, which is a different issue, of whether there was an application to the Mutual company. But this is, both the defendants are subject of this appeal, and so I'm addressing the Fire and Casualty. Now, with regard to the Mutual company Without regard to whether or not, there's a separate question, perhaps, of whether there was an application to Mutual. But could Mutual be liable on the alternative ground, or responsible for a notice on their alternative ground, that it took an adverse action with regard to the issuing company's action because it made the underwriting decisions, as you just  said? Well, there are underwriters for both Fire and Casualty and Mutual. And as I believe Mr. Hauser addressed earlier, oftentimes someone may draw a paycheck but will be acting as an agent for various companies within the State Farm group of companies for purposes of drafting. So who made the decision that he would get assigned to the higher rate company? The decision was made when, under the general auto underwriting guidelines. Which are issued by? Which are issued by State Farm Fire and Casualty Company. It has its own set of guidelines for underwriting that are different from those which Mutual has. State Farm Fire and Casualty is the parent company of State Farm Mutual and State Farm Fire? It's the other way around. State Farm Mutual is the parent company, and State Farm Fire and Casualty is the subsidiary. So if a person comes in and she says, let's assume she says, I want a State Farm policy, that's what you can give me? And then the agent does what they call field underwriting. And in the field underwriting process, the agent asks a series of questions related to, which are cued into the various underwriting guidelines for the two companies. Who makes those decisions? The computer. No, no. This is all done without the use of a computer. Any kind of computer. They call it the Echo Quote program, which is separate from any consumer reports. No consumer reports are used. Somebody wrote that program and decided that if somebody walks in with that request, they're going to be put in State Farm if X is the case and in Mutual if Y is the case. So somebody is making that decision and enforcing it. Who's the somebody? State Farm Fire and Casualty has its underwriting guidelines in that quoting program, which is separate from any consumer report. No consumer report whatsoever. When the agent is listening to the answers that you're giving, I'm typing them into a program, and you tell me you have an auto accident within three years, the State Farm Fire and Casualty's underwriting guidelines say that person may be eligible for a State Farm Fire and Casualty policy. And the quote is prepared for Fire and Casualty only. The problem is that the lower policy is Mutual, right? The lower rate would be? It can be. The rates actually overlap. So you would first, I assume, you would see whether they'd be eligible for the lower rate. You wouldn't just put them into the higher rate, would you? The agent is asking general questions, and the underwriting guidelines for the two companies determine whether they are initially The agent is authorized to underwrite policies for both companies, is that right? That's correct. You walk into a State Farm office, you don't walk into an office that says State Farm Mutual on it or State Farm Fire and Casualty. I walk in, I see the agent, I say I'm very anxious to apply with the State Farm's family of companies. What's the best rate you can give me? Now, have I made an application at that point? No, I don't believe you have. At that point, you're shopping for a quotation. You're just looking for information. At what point is the application complete? And once you tell me that you've had an auto accident within three years under the guidelines, the only quote that the agent can prepare is a quote for fire and casualty. I'll answer you. That may be, again, this background directive is telling her as to what she can do, but it's not so that the person is necessarily ineligible for insurance with Mutual. If someone can get an exception to the general underwriting guidelines, once the State Farm companies only used underwriting scoring to grant exceptions to the general auto underwriting guidelines, and the question was asked early in the proceedings was, what happens if there's a no hit or the agent doesn't go to the computer system to get a consumer report? The general auto underwriting guidelines for State Farm fire and casualty and the general auto underwriting guidelines for Mutual would apply. The person, in this case, Ms. Willis, was never eligible under those general auto underwriting guidelines for a Mutual policy. But if she had had a perfect credit rating, she would have then been switched to Mutual? Then she could have been eligible to then submit an application for Mutual. But there are a number of factors. I have a question about that. Yes. My understanding is that what then happens is they send in an application under the name of fire, but in fact it's considered for both, by the computer system. Because the computer system considers whether or not she's eligible for, you're calling it an exception, but basically whether she's eligible for Mutual. So the application is being considered for both. Yes. She has applied, she has indicated based on the quote, which is not based on her consumer report, that she wishes to apply for the insurance quoted. The agent then prepares a quote. It goes to, in that process, then there is an application made for the insurance quoted. In the instance of someone who says, I just want insurance from State Farm, the consumer may not recognize that there are different companies, but for purposes of- The computer doesn't really either. Because when she sends in the application for a State Farm buyer, it's being considered for both. Because you can get a bounce back that says, and then, this was my real question, it then says, as I understand her, bind her for Mutual. So it doesn't say buy another application. It says bind her. Is that right? Well, the message that you would get would say proceed with your general underwriting guidelines, or if she had a high score, it could say okay to bind with Mutual. It doesn't direct them to put, the agent still maintains field underwriting authority and is not bound by that instruction. But it's basically an authorization to grant an exception in the favor of the person. So at what point has she applied? What does she have to do to apply? I think it's when she gets a quote, and then she sees the quote and says, I'd like to apply for that insurance. But the quote is an offer from State Farm. Is that correct? The quote is an offer from either Fire and Casualty or- I thought it was an offer from somebody at State Farm. At that point, you're telling me that the application is upon her acceptance? The application is made when she then requests, based on the information in the quote, she then requests to apply for that insurance that she's been quoted. What is she applying for? State Farm has already given her a quote and says, isn't State Farm's quote an offer? It's an offer from State Farm, Fire and Casualty in this instance, and then when the agent runs her number, runs the computer system to get a consumer report, if additional information is received that says she's not eligible for- let's say, for example, she doesn't disclose her driving accident, and they prepare an application for mutual. They run the system and discover, yes, there was a driving accident or an accident. Then a letter would be issued, a FCRA notice would have been issued in that instance. If she applies, she discloses her driving record, but is there other information that comes up that makes her ineligible for a fire and casualty policy? A FCRA notice would go out under those instances as well. What the plaintiffs are arguing here is that when the application goes in, any affiliated company with the company that actually, whose quote that she's identified, any affiliated company would then be responsible to run a comparison whether or not their rates are better, their prices are better, and issue notices. Of course. I mean, if you did have this feature at that juncture that she's still being considered for mutual, then you could be right, but the problem is that she is still being considered for mutual at that point by the computer system. Well, I guess we don't see that as a problem. We see that as an opportunity to grant an exception. That doesn't matter. The statute is not a punitive statute either. The question is that she, it seems like an odd use of language to say that if you send in an inquiry to the computer and it considers you for something that you haven't applied for what it's considering you for. Well, I think it's an instance where the insurance, the mutual company, has not taken any action whatsoever. It does not, your rate doesn't trigger any action by denying you insurance that you otherwise would be eligible for. But counsel, if you're right, then doesn't that mean that if I walked in and said, I wish to apply for insurance with State Farm, and State Farm came back and said, I'm sorry, Mr. Bybee, but your report is so bad that we refuse to insure you for anything at any price. Under your theory, I haven't applied for insurance. And if the reason that you turned me down is in part based on my credit report, I don't get a FCRA notice because I haven't applied for insurance because you haven't offered me anything. Well, my theory, I guess, is that when the application occurs is when your generic desire becomes a request for a specific. My answer to Judge Bybee's question is that's right. You would not be entitled to a FCRA notice. Based on a generic. Even though I turned you down on it. Based on just a generic. Because you've just told me you wanted insurance, but you haven't filed a formal application. Even though I came in, I said, I'm applying for insurance. I'm applying for insurance because you haven't offered me anything. I can't accept it. And the action of acceptance is the action of application. Because the way the State Farm companies do it, they don't offer anything until they run a quote and ask the consumer to specify, do you want to proceed with that? Right. But if you come back and tell me that I cannot proceed, I am barred from applying. And so I haven't applied, even though you've turned me down on the basis of my credit report. If the State Farm companies use a credit report to turn you down, then their procedure is to issue a declination notice. But you wouldn't have to in your theory because he hasn't applied. I think it may be over compliance. But I think that the insurance company. But that's not the point. We're trying to understand the statute. I understand. I don't think that. And the question is what the term applied for means in the statute. And you say for State Farm's definition or purposes, we don't consider it a formal application, which is not necessarily what the statute covers. The statute may cover an oral application. That's why I say that the application made is when the individual gets beyond the issue of the particular quote.  The statute talks about when anybody applies for insurance. And somebody may come into your office and say, I'm Judge Bybee, I hereby apply for insurance. You may say, well, we don't consider that a formal application. But it may still be covered by the term application in the statute. I think to make an application, you have to, the consumer has to identify that which they are asking the insurance company. What are you asking us for? If you want a quote, you can get a quote. But if they walk away once they get a quote, that's not an application for insurance. If they say, I come in and say I want insurance, give me a quote. They run a quote without a score. Suppose somebody walked in and said, I want to apply for insurance from Mutual. And the person, as I understand it, what you would say is, no, you can't do that. Right. But that's not a denial of insurance from Mutual. That's not a denial from Mutual because it's a denial, but it is not a denial based on a consumer report. And the Fair Credit Act only requires notices to be issued when there's a denial based on a consumer report. I understand that. But we can vary the hypothetical. I mean, suppose she said, no, you can't do it because, well, she could say, you know, how's your credit? And you could say, oh, it's not so good. They said, okay, you can't do it. Has she applied or not? No, I don't think until the ‑‑ she may have ‑‑ the action taken is not in whole or in part based upon a consumer report. They do this underwriting interview process, and that's what directs the person to one company or the other. And where there is information, the Fair Credit Act makes an exception where the information that results in someone being slotted is based on a transaction or experience. When I share that information with you ‑‑ In my hypothetical before, she's being precluded from paying, from applying to Mutual but not being denied by Mutual, even though she might have been able, if she was allowed to apply to Mutual, to get a better rate based on her credit report. If that is the way the Fair Credit Act is interpreted, then the moment someone walks through the door, which is an argument that the plaintiffs have made in this case, saying I'm here for a quote or I'm here to obtain insurance, then every insurance company that may be within the group of insurance companies is responsible to issue a fair credit notice. Because under the instance of somebody saying that the minute I walk through the door and say I want insurance, that any better insurance that might be available, because there might be an exception granted by 1 or 10 or 100 other companies that you happen to be an agent for, that all the ‑‑ Related companies. I'm only talking about related. Okay, related companies. Any company. You'd have to run comparisons to see if that's better. We're getting close to doubling your time now. Thanks very much. Thank you very much. Your Honor, I think I've used my time. I think I have a point, but I'm going to move on to the next argument. All right. Why don't you move on to the next argument then? Okay. The next argument is Ito v. Geico. Good morning, Your Honor. I represent, Your Honors, I represent Plaintiff Eugene Ito.
judges: Reinhardt, Berzon, Bybee